1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    GAUDENCIO MOZO,                          No.  2:12-cv-00025 MCE AC

12                    Petitioner,

13         v.                                  FINDINGS AND RECOMMENDATIONS

14    K. ALLISON,

15                    Respondent.

16

17         Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas

18    corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the petition filed January 3, 2012,

19    ECF No. 1, which challenges petitioner's 2010 conviction for multiple child sexual abuse

20    offenses.  Respondent has answered, ECF No. 15, and petitioner has filed a traverse, ECF No. 31.

21                               BACKGROUND

22         A Sacramento County jury found petitioner guilty of sexual intercourse or sodomy with P.

23    R., a child 10 years of age or younger, in violation of Cal. Penal Code § 288.7(a); two counts of

24    lewd and lascivious acts with P. R., a child under the age of 14 years, in violation of Cal. Penal

25    Code § 288(a);  one count of lewd and lascivious acts with A. B., a child under the age of 14

26    years, in violation of Cal. Penal Code § 288(a); and two counts of lewd and lascivious acts with

27    L. M., a child under the age of 14 years, in violation of Cal. Penal Code § 288(a).  In connection

28    with each count, the jury found a multiple-victim enhancement to be true.

                                       1

1    The evidence at trial established that petitioner sodomized his six-year-old granddaughter,

2    P. R., and touched her vaginal area with his fingers.  Petitioner put his hand inside A. B.'s

3    underwear when she was three or four years old.  He inappropriately touched six-year-old L. M.

4    on two occasions. When interviewed by the police, petitioner admitted sodomizing P. R. but

5    claimed she provoked him and initiated the conduct.  Petitioner also admitted inappropriately

6    touching L. M. on two occasions.

7    On February 26, 2010, the court sentenced petitioner to an aggregate term of 85 years to

8    life in state prison.  Petitioner timely appealed, challenging the trial court's handling of his motion

9    to discharge retained counsel.  Petitioner also challenged the multiple-victim enhancement

10   attached to Count One.  On September 19, 2011, the California Court of Appeal struck the

11   sentencing enhancement but otherwise affirmed the judgment.  Lodged Doc. 8.  The California

12   Supreme Court denied review on November 30, 2011.  Lodged Doc. 9.

13   A petition for writ of habeas corpus dated December 29, 2011 was timely filed in this

14   court on January 3, 2012.  ECF No. 1.  On March 19, 2012, petitioner sought leave to amend the

15   petition and moved for a stay to permit the exhaustion in state court of additional claims.  ECF

16   Nos. 17, 18.  On June 26, 2012, the magistrate judge previously assigned to the case denied the

17   motions, finding that the proposed amendments were frivolous in that none stated colorable

18   claims.  ECF No. 21.  The district judge denied petitioner's motion for reconsideration.  ECF No.

19   23.  After the case was reassigned to the undersigned, petitioner moved to amend in order to add

20   newly-exhausted claims.  ECF No. 27.  Because the proposed amendments were the same as

21   those previously rejected, the motion was denied.  ECF No. 30.

22   Respondent answered on the merits on February 28, 2012.  ECF No. 15.  Respondent

23   asserts no procedural defenses.  Id.  Petitioner's traverse was filed on July 10, 2013.  ECF No. 31.

24   STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

25   28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

26   1996 ("AEDPA"), provides in relevant part as follows:

27         (d) An application for a writ of habeas corpus on behalf of a person
          in custody pursuant to the judgment of a state court shall not be
28        granted with respect to any claim that was adjudicated on the merits

1    in State court proceedings unless the adjudication of the claim –

2    (1) resulted in a decision that was contrary to, or involved an
     unreasonable application of, clearly established Federal law, as
3    determined by the Supreme Court of the United States; or

4    (2) resulted in a decision that was based on an unreasonable
     determination of the facts in light of the evidence presented in the
5    State court proceeding.

6    The statute applies whenever the state court has denied a federal claim on its merits,

7    whether or not the state court explained its reasons.  Harrington v. Richter, 131 S. Ct. 770, 785

8    (2011).  State court rejection of a federal claim will be presumed to have been on the merits

9    absent any indication or state-law procedural principles to the contrary.  Id. at 784-785 (citing

10   Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is

11   unclear whether a decision appearing to rest on federal grounds was decided on another basis)).

12   "The presumption may be overcome when there is reason to think some other explanation for the

13   state court's decision is more likely."  Id. at 785.

14   The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

15   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

16   U.S. 63, 71-72 (2003).  Clearly established federal law also includes "the legal principles and

17   standards flowing from precedent."  Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002)

18   (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir. 2002)).  Only Supreme Court precedent

19   may constitute "clearly established Federal law," but circuit law has persuasive value regarding

20   what law is "clearly established" and what constitutes "unreasonable application" of that law.

21   Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000); Robinson v. Ignacio, 360 F.3d 1044,

22   1057 (9th Cir. 2004).

23   A state court decision is "contrary to" clearly established federal law if the decision

24   "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

25   U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

26   court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

27   the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

28   was incorrect in the view of the federal habeas court; the state court decision must be objectively

3

1    unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

2           Review under § 2254(d)(1) is limited to the record that was before the state court.  Cullen

3    v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  The question at this stage is whether the state court

4    reasonably applied clearly established federal law to the facts before it.  Id.  In other words, the

5    focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 1399.  Where the

6    state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the

7    state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d 724, 738 (9th

8    Cir. 2008) (en banc).  A different rule applies where the state court rejects claims summarily,

9    without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a state court

10   denies a claim on the merits but without a reasoned opinion, the federal habeas court must

11   determine what arguments or theories may have supported the state court's decision, and subject

12   those arguments or theories to § 2254(d) scrutiny.  Richter, 131 S. Ct. at 786.

13          Relief is also available under AEDPA where the state court predicated its adjudication of

14   a claim on an unreasonable factual determination.  Section 2254(d)(2).  The statute explicitly

15   limits this inquiry to the evidence that was before the state court.  Id.  An unreasonable

16   determination of facts exists where, among other circumstances, the state court made its findings

17   according to a flawed process -- for example, under an incorrect legal standard, or where

18   necessary findings were not made at all, or where the state court failed to consider and weigh

19   relevant evidence that was properly presented to it.  See Taylor v. Maddox, 366 F.3d 992,

20   999-1001 (9th Cir.), cert. denied, 543 U.S. 1038 (2004).  A state court's factual conclusion can

21   also be substantively unreasonable where it is not fairly supported by the evidence presented in

22   the state proceeding.  See, e.g., Wiggins, 539 U.S. at 528.

23                                      DISCUSSION

24   I.      Petitioner's Allegations and Relevant Factual Background

25          A.  The Claims

26          Petitioner presents two claims for relief, both of which challenge the trial court's handling

27   of petitioner's motion to discharge his lawyer.  Claim One alleges that the trial court abused its

28

                                              4

discretion by applying <u>Marsden</u> standards[1] to deny the appointment of substitute counsel. ECF No. 1 at 4. The petition states the following supporting facts:

> Petitioner moved to discharge retained counsel. In a closed hearing the trial court found trial counsel's performance had been more than adequate, refused to rule on the motion, instead ruling for Petitioner to consult with his counsel regarding his future representation.

<u>Id.</u>

Claim Two contends that the trial court effectively denied petitioner representation when it denied the appointment of substitute counsel. Petitioner alleges:

> After requesting a MARSDEN hearing, the court held an inquiry and focused on the adequacy of retained counsel's performance. Petitioner requested appointed counsel to replace retained counsel. The court refused to appoint substitute counsel without analyzing whether appointment of new counsel might cause unreasonable disruption, cause inconvenience, or unreasonably disrupt the court's docket.

<u>Id.</u>

These closely related claims were exhausted on direct appeal. The California Court of Appeal considered the two claims together. This court does the same.

B. <u>The Trial Court Record</u>

Petitioner was represented at trial by retained counsel, Lawrence Cobb, and assisted by a Spanish-language interpreter in all proceedings. Plea negotiations were ongoing through the first day of motions in limine, and an offer of either 40 years or 25-to-life remained on the table until the morning of Monday, January 11, 2010, the second day of trial. RT 2.[2] The offer was rejected.

On January 11, Mr. Cobb informed the court that petitioner "expressed through the interpreter his desire to do what is commonly called a Marsden motion." RT 12. Counsel continued that he had explained to his client "that Marsden applies to appointed counsel, but it is interchangeable with the fact that he wants to have a new lawyer." <u>Id.</u> The court asked the prosecutor to step out of the courtroom so that he could speak privately with petitioner and Mr.

---

[1] <u>People v. Marsden</u>, 2 Cal. 3d 118 (1970).
[2] "RT" refers to the Reporter's Transcript of Proceedings, Lodged Docs. 1 & 2.

1   Cobb.  The court noted, "Obviously we don't have a Marsden motion, and the defendant is in a

2   position to fire his counsel at any time and hire his own counsel."  Id.

3         Out of the presence of the prosecutor, the following exchange occurred:

4         THE COURT:  . . . What is your concern, Mr. Mozo, at this point,
          and what's your desire?

5
          THE DEFENDANT:  Let's say change my attorney.

6
          THE COURT:  Mr. Cobb, your status is that you are retained; is

7         that correct?

8         MR. COBB:  That's correct.

9         THE COURT: Mr. Mozo, you have the right to have counsel of
          your choice.  I know Mr. Cobb has been involved in your case now

10        for, what, at least a year, Mr. Cobb?

11        MR. COBB:  Yes. Year and a half perhaps. It's been a considerable
          period of time.

12
          THE COURT: And I've had actually the opportunity to speak to

13        Mr. Cobb. I have reviewed his pleadings, his paperwork that
          relate[s] to this case. And it appears that Mr. Cobb is doing a good

14        job.

15        Is there something that you're upset about with respect to Mr. Cobb
          that I may be able to address? I mean, if in fact there is some — I

16        know that you may not be happy with the status of the plea
          negotiations in the case, but you should also understand that Mr.

17        Cobb doesn't have the ability to control that.

18        That's something controlled primarily by the District Attorney's
          Office. But if you wanted to address me, I'm certainly willing to

19        hear what it is that concerns you about Mr. Cobb.

20        THE DEFENDANT: Yes. What I would want is to change to see if
          you can give me an attorney because I have felt bad because I have

21        always thought that when someone is working with another person
          that you have to have good communications, and we have not had

22        that, good communication.

23        To begin with I never received any paper like the papers like they
          give to people like what they call the discovery papers. Ever since

24        I've been here, I haven't received not one piece of paper.

25        THE COURT: Mr. Mozo, you were initially represented by the
          Public Defender's Office, were you not?

26
          THE DEFENDANT: Yes.

27
          THE COURT: Didn't the Public Defender give you the discovery

28        in the case?

6

THE DEFENDANT: At no time. I've been here for two years and they have never given me any paper at all.

<u>Marsden</u> Transcript at 13-15.[3]

Mr. Cobb explained that he came into the case after the preliminary hearing. It was Cobb's general practice to review the discovery with clients but not to provide copies. <u>Id.</u> at 15.[4] The court inquired further about Mr. Cobb's efforts on petitioner's behalf and the status of their working relationship. Petitioner acknowledged that Cobb had explained the status of plea negotiations over the course of the preceding days, and had been to see him to discuss trial strategy. <u>Id.</u> at 16-17. The following exchange ensued:

THE COURT: When was the last time you saw Mr. Cobb?

THE DEFENDANT: I saw him this Sunday.

THE COURT: Did you have a chance to speak with Mr. Cobb?

THE DEFENDANT: Yes. I talked to him with the interpreter that he say, and little did I know attorney and his client, they should be like one in the same. But the gentleman he arrived, and he was angry.

And I know I have this problem that I have here, and instead of a person trying to help me and support me he is angry.

It is not something easy that they are telling me. They want to damage me and they want to destroy me and my family.

THE COURT: Who wants to damage you and who wants to destroy your family?

THE DEFENDANT: I'm saying that because, listen, I tried in the best way possible. Nobody came to arrest me at my house or in the street. I went specifically. If I would have done something terrible, I had a month opportunity had I done something bad.

THE COURT: All right. Mr. Mozo, I'm a little confused because I'm not — I understand that you had contact with law enforcement. I had the general idea of what took place in terms of your interaction with law enforcement leading up to the arrest.

---

[3] "<u>Marsden</u> Transcript" refers to the previously-sealed portion of the Reporter's Transcript, Lodged Doc. 10.

[4] "I just feel it is bad practice. Reports get around. And there are those in jail who would like to utilize for their own benefit, real or manufactured admissions by a cell mate or somebody else in the institution." <u>Id.</u>

> But what I'm trying to focus on is your relationship between you and Mr. Cobb. And that's, I mean, you're going over an area that really is not relevant to what I'm trying to determine, and that is whether or not there was adequate representation.
>
> So what is it about — you said there was this breakdown in communication and that Mr. Cobb was upset the other day. You should also recognize that during the course of a case of this nature, and I — I have in the past, I've been a defense attorney like Mr. Cobb so I know that these cases can be stressful for everyone involved, including both you as well as Mr. Cobb.
>
> And there will be moments or times during that representation when tempers oftentimes can flare. But that doesn't mean that there has been a breakdown in the attorney-client relationship.

Id. at 17-19.

Mr. Cobb explained that he had become frustrated in the process of petitioner's decision to reject the plea offer against his advice. Cobb emphasized that petitioner's rejection of the plea offer would not affect his representation of petitioner at trial. Id. at 19-20. The court then stated:

> Mr. Mozo, you understand this process obviously is very difficult for everyone. It is very stressful for you, and it is also stressful for Mr. Cobb as well. . . .
>
> But I haven't heard anything at this stage to cause me to believe that Mr. Cobb is not doing a good job representing you here. He's filed a number of motions that has raised all of the issues that I think that if I was in the same position as Mr. Cobb I would have raised as well, including the motion that we are about to hear this morning.
>
> The only thing that I would ask at this point is that you think about what it is that you want this Court to do. And sometime later today have Mr. Cobb report back to me how you want to proceed. I would indicate to you that this trial has been delayed a number of times. It's been pending for almost two years, if not over two years now.
>
> And so I'm reluctant to do anything that's going to jeopardize the trial date. Actually, we are in the middle of a trial, and I can only get a sense that this is dilatory on your part. If there has been a break down of communication issue, that would have existed a week ago. If anything, there appears to have been more contact within the last several days between you and Mr. Cobb than there has been on other periods of time.
>
> But I do get the sense that Mr. Cobb is involved in your case. He's knowledgeable about the facts and circumstances of your case as well as the law. So at this point I'm not going to take any additional action because I want you and Mr. Cobb to further discuss what the issues are between the two of you.

8

And if you want me to consider something, I'll do so at your request whether or not it is to — I would indicate to you that there is probably no way that another attorney is going to be able to come in and start this trial today.

And so I have to weigh all those facts, but there is absolutely nothing from what you've indicated to me to cause me to believe that Mr. Cobb is not adequately representing you other than the fact that you may be dissatisfied with the status of the plea negotiations, that everything that I have seen thus far including the communications between Mr. Cobb and the Court verbally indicate that he is aware of the facts and circumstances of the case.

[He] [h]as identified the issues that he needs to raise not only at trial but pretrial to put your case in its best light for the purposes of proceeding to trial. And there is nothing to cause me to believe that he would not adequately represent you in this.

So at this point, Mr. Mozo, I'm not going [to] take any action. Sometime later today if you want me to consider specific requests including appointing counsel for you or something else then I would entertain that request.

I'm not indicating I would grant it, but I would entertain the request because I do believe that Mr. Cobb is doing a good job. And I'm not in a position at this point to grant any continuance for you to investigate some other aspects of your case. But you are entitled to be represented by the attorney of your choosing.

You've hired Mr. Cobb. If you wanted to retain another attorney and bring them in that's something that I'm not even involved in. You could bring that attorney in.

In the event that you want me to appoint counsel for you in lieu of Mr. Cobb, then that's something that I would consider.

But I want to hear from you later today if that's something you desire for me to consider that. Then I'll determine whether or not that's something I'm prepared to do.

Id. at 20-23.

After the lunch break, Cobb represented that he and petitioner had talked and that petitioner was "ready to go forward with the trial." RT 25. The court inquired as follows:

THE COURT: Mr. Mozo, is that correct? At this point whatever concerns you had with respect to Mr[.] Cobb that we discussed earlier in the in camera hearing have been resolved, and you're prepared to proceed with Mr. Cobb as your attorney of record?

THE DEFENDANT: Yes.

Id.

9

1    Trial proceeded.  After the prosecution rested its case, outside the presence of the jury,

2  petitioner told the court that he was unhappy with counsel's representation.  RT 341-42.  After a

3  conversation in closed session, the court explained on the record that petitioner had requested

4  court-appointed substitute counsel.  RT 350.  The court ruled as follows:

5           I do recognize that the right of effective assistance of counsel
            encompasses the right of counsel of one's choice, including the
6           ability to discharge counsel and if exigency is established to appoint
            counsel in place of the counsel.
7

8           However, the defendant's right to. . . counsel of his choice, whether
            or not it be retained or appointed, is not an absolute right. In fact,
            the Court can deny such request, as it will do at this stage, given the
9           timeliness – or untimeliness of the defendant's request.

10          The record should reflect that this request has been made at a
            posture where we were going to commence instructions and closing
11          arguments within minutes.  The defense was prepared to rest.  We
            have gone over exhibits. . .
12
            . . . We have called upon a number of civilian witnesses, including
13          three very small children, to testify during the course of this
            proceeding.
14
            So although I recognize the importance of the defendant's right to
15          counsel, this is a situation that I do believe would result in severe
            prejudice to the People, and it would result in the disruption of the
16          orderly process of the administration of justice if the Court were to
            grant Mr. Mozo's request to replace, or to relieve Mr. Cobb and to
17          appoint counsel.

18          . . . So the request to relieve Mr. Cobb and appoint counsel is
            denied.
19

20  RT 351-52.

21       In addition to denying the motion on untimeliness grounds, the court noted that it would

22  not have granted the motion even if it had been timely, because there had been no deficiency in

23  Mr. Cobb's performance.  Id. at 352-53.

24     II.     The Clearly Established Federal Law

25       The Sixth Amendment right to counsel encompasses two distinct rights: a right to

26  adequate representation, and a right to choose one's own counsel.  United States v. Cronic, 466

27  U.S. 648, 657 n. 21 (1984).  Indigent defendants have a constitutional right to effective counsel,

28  but not to have a specific lawyer appointed by the court and paid for by the public.  Caplin &

10

1  Drysdale v. United States, 491 U.S. 617, 624 (1989).  A defendant who can hire his own attorney

2  has a different right, independent and distinct from the right to effective counsel, to be

3  represented by the attorney of his choice.  See United States v. Gonzalez-Lopez, 548 U.S. 140,

4  147-48 (2006).  The Supreme Court has recognized "a trial court's wide latitude in balancing the

5  right to counsel of choice against the needs of fairness . . . and against the demands of its

6  calendar."  Id. at 152 (citing Wheat v. United States, 486 U.S. 153, 159-60 (1988)).

7      The Sixth Amendment does not guarantee a meaningful relationship between the accused

8  and counsel.  Morris v. Slappy, 461 U.S. 1, 13-14 (1983).  To establish a constitutional violation

9  based on ineffective assistance of counsel, a petitioner must show (1) that counsel's

10  representation fell below an objective standard of reasonableness, and (2) that counsel's deficient

11  performance prejudiced the defense.  Strickland v. Washington, 466 U.S. 668, 692, 694 (1984).

12      Federal habeas relief is unavailable to remedy errors of state law.  Lewis v. Jeffers, 497

13  U.S. 764, 780 (1990); see also Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009).

14      III.      The State Court's Ruling

15      Because the California Supreme Court denied discretionary review, the opinion of the

16  California Court of Appeal constitutes the last reasoned decision on the merits and is the subject

17  of habeas review in this court.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704

18  F.3d 1026, 1034 (9th Cir. 2012).

19      The Court of Appeal ruled as follows:

20          Defendant argues there was an abuse of discretion when the trial
21          court applied the Marsden standard to a motion to discharge
           retained counsel. The trial court did not do so.

22          As for the first request, the court advised defendant at the end of the
           in camera discussion that it was not taking any action on
23          defendant's request to discharge retained counsel and have counsel
           appointed but would consider defendant's request later that day.
24

25          We reject defendant's claim that the trial court was required to rule
           and abused its discretion by delaying its ruling to later that day.
26          Defendant cites no authority requiring an immediate ruling.

27          Later that day, Cobb informed the court that he and defendant had
           spoken and that defendant seemed ready to proceed with trial. The
           court asked defendant, "Mr. Mozo, is that correct? At this point
28          whatever concerns you had with respect to Mr. Cobb that we

11

discussed earlier in the in camera hearing have been resolved, and you're prepared to proceed with Mr[.] Cobb as your attorney of record?" Defendant answered, "Yes."

"[A] defendant can abandon his request to substitute another counsel." (People v. Vera (2004) 122 Cal.App.4th 970, 982.) We conclude that defendant can likewise abandon his request to discharge retained counsel and to have counsel appointed and did so here by expressly deciding to proceed to trial with retained counsel.

Defendant cites King v. Superior Court (2003) 107 Cal.App.4th 929 in support of his other argument that a hearing on his request to discharge retained counsel is a critical stage and that Cobb abandoned his obligation to defendant, did nothing to advocate for him, and instead, argued against his interests at the in camera hearing. We reject this claim as well.

In King, the trial court determined that the defendant had forfeited his right to counsel after four appointed counsel had withdrawn based on the defendant's assaults and threats towards them. In reversing, King found that the defendant's due process rights and right to counsel were violated in that appointed counsel, instead of arguing in defendant's favor at the forfeiture hearing, argued in favor of forfeiture and presented evidence against the defendant. (King v. Superior Court, supra, 107 Cal.App.4th at pp. 934–950.) King is distinguishable. Here, Cobb simply put into context defendant's dissatisfaction and did not argue against defendant.

Defendant claims that "Cobb's actions stand in stark contrast to the advocacy of the trial counsel in People v. Munoz [(2006) 138 Cal.App.4th 860]." In Munoz, when the trial court expressed doubt that defendant had shown inadequate representation to discharge counsel, the defendant's attorney stated, " 'I'm retained counsel in this case and it's always been my understanding that a person can terminate the services of retained counsel at any time on any quantum of proof that he wants to.... I don't think anybody should be required to have me as their attorney if they don't want me." (Id. at p. 865.)

We reject defendant's claim that Cobb advocated against defendant's interests. "The right of a nonindigent criminal defendant to discharge his retained attorney, with or without cause, has long been recognized in this state [citations]...." (People v. Ortiz (1990) 51 Cal.3d 975, 983.)

"A nonindigent defendant's right to discharge his retained counsel, however, is not absolute. The trial court, in its discretion, may deny such a motion if discharge will result in 'significant prejudice' to the defendant [citation], or if it is not timely, i.e., if it will result in 'disruption of the orderly processes of justice' [citations]." (People v. Ortiz, supra, 51 Cal.3d at p. 983.)

The defendant's second request to discharge his counsel after the prosecution presented its case was denied as untimely. Defendant

1    does not challenge that ruling.

2    Lodged Doc. 8 at 13-16.

3    IV.    Objective Reasonableness Under § 2254(d)

4    The state appellate court made no unreasonable findings of fact, and its adjudication of the

5    right to counsel issue involved no unreasonable application of clearly established federal law.

6    Although the state court did not cite or explicitly discuss the Sixth Amendment or federal case

7    law, it is presumed that the federal constitutional claim was resolved against petitioner on the

8    merits. Johnson v. Williams, 133 S.Ct. 1088 (2013).

9    The appellate court reasonably found, based on the transcripts of the January 11, 2010

10    proceedings, that petitioner had affirmatively agreed to proceed to with Mr. Cobb. That finding

11    shuts the door on any claim that petitioner's right to counsel was infringed. The state court also

12    reasonably found that the trial court did not apply Marsden standards as petitioner contends.[5] The

13    trial court correctly told petitioner that he had the right to discharge or replace retained counsel,

14    but that the appointment of counsel was a separate question. Petitioner did not raise that question

15    until the trial was almost over. The trial court also correctly advised petitioner that practical

16    considerations could limit his ability to substitute counsel, whether retained or appointed. The

17    trial court's encouragement of further consultation between petitioner and Cobb served to protect

18    petitioner's rights, rather than infringing them. In any case, because the appellate court

19    reasonably found that petitioner abandoned his January 11, 2010 request to discharge Cobb

20    and/or secure new counsel, the denial of this claim cannot be disturbed under 28 U.S.C. §

21    2254(d)(2) (authorizing habeas relief where state court adjudication rests on unreasonable

22    determination of facts).[6]

23    The appellate court's analysis was also reasonable under clearly established federal law.

24    _____

25    [5] To the extent that petitioner challenges the process that was used to address the status of
representation, the claim arises under state law and is not cognizable in this court. See Lewis v.

26    Jeffers, 497 U.S. at 780. Petitioner is entitled to relief here only if the state court unreasonably
rejected the claim that petitioner was denied his Sixth Amendment right to counsel, and if that

27    right was actually violated. See Frantz v. Hazey, 533 F.3d 724.

28    [6] The finding that Cobb had not advocated against petitioner's interests is also supported by the
record, and therefore not unreasonable.

13

People v. Ortiz, the California Supreme Court case on which the state court relied, is fully

consistent with U.S. Supreme Court precedent regarding the right to counsel – including the

recognition that trial courts have broad discretion to balance the right to counsel of choice against

considerations of fairness and the demands of the court's calendar.  See United States v.

Gonzalez-Lopez, 548 U.S. at 147-48; Wheat v. United States, 486 U.S. at 159-60.  The state

appellate court reasonably concluded that the trial court did not abuse its discretion in this case.

No U.S. Supreme Court precedent suggests that the Sixth Amendment is violated on facts similar

to those presented here.  Petitioner was never unrepresented, and no facts support petitioner's

claim that Mr. Cobb failed to act as the counsel guaranteed by the Sixth Amendment.  Petitioner's

January 11, 2010 complaints focused on the absence of a meaningful attorney-client relationship,

and therefore did not state a prima facie case of a Sixth Amendment violation.  See Morris v.

Slappy, 461 U.S. at 13-14.  Accordingly, the state court's rejection of habeas relief cannot be

disturbed under 28 U.S.C. § 2254(d)(1) (authorizing habeas relief where state court adjudication

unreasonably applies federal law).

        Even if petitioner also means to challenge the trial court's denial of his second request for

appointment of substitute counsel, and even if such a claim were properly presented in this court,[7]

petitioner would not be entitled to relief.  The trial court gave ample reasons for denying the

untimely request: new counsel could not reasonably step into the case after the close of evidence,

a continuance would cause disruption to the court and its calendar, and starting over would

impose unfair burdens on the prosecution and on the three child witnesses.  There is no violation

of the right to counsel on these facts.

////

////

////

_____

[7]  The appellate court correctly stated that petitioner did not argue on appeal that the second request was wrongly denied.  See Lodged Doc. 5(Appellant's Opening Brief).  Accordingly, the sealed transcript of the second hearing was never unsealed and made part of the state court record, and is not before this court.  Any putative claim based on the second request for counsel would be unexhausted.

1                                    CONCLUSION

2          For all the reasons set forth above, IT IS RECOMMENDED that petitioner's application

3   for federal habeas corpus be denied.

4          These findings and recommendations are submitted to the United States District Judge

5   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

6   after being served with these findings and recommendations, any party may file written

7   objections with the court and serve a copy on all parties.  Such a document should be captioned

8   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

9   he shall also address whether a certificate of appealability should issue and, if so, why and as to

10  which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the

11  applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.  §

12  2253(c)(3).  Any response to the objections shall be filed and served within fourteen days after

13  service of the objections.  The parties are advised that failure to file objections within the

14  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

15  F.2d 1153 (9th Cir. 1991).

16  DATED: November 20, 2014

17                                          _____

18                                          ALLISON CLAIRE
                                            UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26

27

28
                                               15